```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT

NYOKA HUTCHINSON and ARACELLIE    :
DELGADO, individually and on      :
behalf of all                     :
others similarly situated,        :
                                  :
     Plaintiffs,                  :
                                  :
v.                                :   Case No. 3:21-cv-325(RNC)
                                  :
UNIVERSITY OF SAINT JOSEPH,       :
                                  :
     Defendant.                   :
```

RULING AND ORDER

Nyoka Hutchinson and Aracellie Delgado bring this putative class action against the University of Saint Joseph (USJ), claiming principally that USJ's transition to online instruction in response to the COVID-19 pandemic breached a specific promise to provide in-person classes.  USJ has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint for failure to state a claim on which relief may be granted.  I agree that the factual allegations in the amended complaint are insufficient to plead a claim for relief and therefore grant the motion to dismiss without prejudice.  See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); see also Fed. R. Civ.

1

P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

I. Background

The amended complaint alleges the following. Plaintiffs were enrolled as full-time students for the Spring 2020 academic semester in USJ's Master of Social Work (MSW) program. ECF No. 23 ¶ 2. They selected the MSW program based on a promise that the program would be conducted entirely in person. Id. ¶ 7, 8. This promise was conveyed by course listings and syllabi, which included the time and physical locations of classes, id. ¶ 29, and a "Student Handbook," which touted the benefits of on-campus living at USJ, id. ¶ 30. Plaintiff Delgado was specifically promised in-person instruction through in-person classes when she applied for the MSW Program and was interviewed by its then-director, Dr. Stanley Battle. Id. ¶ 11. Before the pandemic, USJ charged more for credits obtained in-person than credits obtained online, and it charged the highest amount for credits obtained in the MSW Program, which was in-person and had a clinical component. Id. ¶ 15.

In March 2020, USJ announced that it would temporarily shift to online-only instruction due to the COVID-19 pandemic. Id. ¶ 17. In August 2020, USJ announced that students could choose between in-person and remote learning for the fall semester, but most course offerings were designated online-only.

2

Id. ¶ 34.  Despite this, USJ has continued to charge full tuition.  Id. ¶ 35.

Plaintiffs seek, on behalf of themselves and a class of similarly situated students, USJ's "disgorgement of the prorated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for the diminished value of online learning, as well as for each subsequent semester, proportionate to the amount of in-person learning opportunities that were no longer available in the subsequent semesters."  Id. ¶ 39.

   II. Legal Standard

Under Rule 12(b)(6), a complaint is properly dismissed when it fails to state a claim upon which relief may be granted.  To withstand a properly supported motion to dismiss under this Rule, a complaint must present a claim that is "plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plausibility standard requires the plaintiff to provide factual allegations permitting a reasonable inference that the defendant is liable for the alleged wrong.

   III. Discussion

      a. Count One: Breach of Contract

Plaintiffs attempt to state a claim for breach of contract under Connecticut law, which requires (1) formation of an

agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages. Meyers v. Livingston Adler, Pulda, Meiklejohn and Kelly, P.C., 311 Conn. 282, 291 (2014). Plaintiffs contend that when they paid tuition for the MSW program, they entered into a binding contract requiring USJ to provide in-person instruction. They further contend that when USJ moved classes online, it deprived them of the in-person instruction for which they had bargained entitling them to damages. ECF No. 23 ¶¶ 50-56.

Connecticut law provides a cause of action for breach of a contract for educational services when "the educational institution failed to fulfil a specific contractual promise distinct from any overall obligation to offer a reasonable program." Gutpa v. New Britain General Hospital, 239 Conn. 574, 592-93 (1996).[1] In Gutpa, the Connecticut Supreme Court cited with apparent approval cases from other jurisdictions involving unfulfilled promises to provide a certain number of hours of instruction, to provide tutoring sessions, and to provide training on up-to-date equipment. Accordingly, damages may be

---

[1] A student may also sue for breach of contract when the educational program failed in some fundamental respect, such as by not offering any of the courses necessary to obtain certification in a particular field. Gupta, 239 Conn. at 592. Here, plaintiffs admit that they continued to attend classes and advance towards the degrees they were pursuing at the University. ECF No. 23 ¶¶ 34-35.

4

imposed under state law when educational services of this nature have been specifically promised yet not provided.

USJ contends that plaintiffs have not alleged facts showing a specific promise by USJ that is enforceable under Connecticut law as applied to contracts for educational services.  In response, plaintiffs point to several written materials published by USJ.  First, they reference "course listings" and "course syllabi," which include a time and physical location for classes.  ECF No. 23 ¶¶ 10, 29.  A majority of courts in the Second Circuit have dismissed claims based on similar references.  See Amable v. New School, 2021 WL 3173739, at *7-8 (S.D.N.Y. July 27, 2021).

Viewed most favorably to plaintiffs, the "course listings" and "course syllabi" reflect a mutual assumption that in-person classes would be the norm.  But they do not contain a promise by USJ to provide exclusively in-person instruction analogous to the promises made in the cases cited in Gutpa.  Much less do they manifest an intention to provide in-person classes during a pandemic.  That the course listings and syllabi manifested such an unlikely commitment is belied by the following disclaimer in the course catalog: "[T]he provisions of this publication are subject to change without notice and do not constitute an irrevocable contract between any student or applicant for

admission and the University of Saint Joseph." See ECF No. 29 at 14.

Plaintiffs next point to the SJU's "Student Handbook," and quote the following from a section entitled "Residential Life":

> [L]iving on campus at the University of Saint Joseph enriches your university experience and provides you a home away from home. Resident students develop strong friendships, have extensive leadership opportunities, participate in activities on the evenings and weekends, and have access to the support needed to achieve their academic goals.

ECF No. 23 ¶ 30; see ECF No. 29-1 at 22 (Ex. 1). The quoted excerpt includes no language that can reasonably be interpreted as manifesting an intention to provide exclusively in-person instruction to MSW students. Like the course catalog, moreover, the handbook expressly states that it is not part of the contract between USJ and its students.

Next, plaintiffs rely on a screenshot showing the tuition per credit for various categories of course offerings at USJ. ECF No. 23 ¶ 15. The categories are "On-Campus," "Online," "Audit Tuition," and "Social Work (MSW)," with the course credits for MSW being the most expensive. The prices shown by the screenshot do not imply a contractual commitment by USJ to provide exclusively in-person instruction to students in the MSW program. See Goldberg v. Pace Univ., No. 20 CIV. 3665 (PAE), 2021 WL 1565352, at *8, n.10 (S.D.N.Y. Apr. 21, 2021) ("The closest the [complaint] comes [to alleging a relevant price

6

difference] is to note that Pace offers online masters programs at a lower price. But, critically, it does not plead that Pace offers an online, lower-cost version of the Master of Fine Arts program – the program in which [Plaintiff] enrolled").[2]

In addition to the foregoing written materials, the amended complaint alleges that a promise of in-person instruction was made orally by a USJ representative to one of the plaintiffs. The allegation is as follows: "Plaintiff Aracellie Delgado – and upon information and belief, all students in the MSW Program – was specifically promised in-person instruction through in-person classes when they applied for the MSW Program and were interviewed by its then-director, Dr. Stanley Battle." ECF No. 23 ¶ 11.

Construed most favorably to plaintiffs, the quoted language may be interpreted to mean that when Battle interviewed Delgado, they discussed the importance of in-person classes for students in the MSW program and Battle assured Delgado all her classes would be in-person. That such an exchange occurred during the interview is not outside the realm of possibility but the facts alleged in the complaint fall short of supporting a plausible

---

[2] In Metzner v. Quinnipiac University, the court was able to make a more direct comparison between the price of online and in-person undergraduate degree programs than is possible here. See 528 F. Supp. 3d at 15, 33 (D. Conn. 2021).

inference that such an exchange actually took place.  Without more detail concerning what was said in the interview, the allegation that Battle "specifically promised" in-person instruction appears to be an unwarranted factual deduction or legal conclusion, neither of which can avert dismissal for failure to state a claim.  See Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).[3]

Plaintiffs also attempt to bring a claim for breach of the implied covenant of good faith and fair dealing, which provides a basis for recovery when a party to a contract deprives the other of the benefits of the contract in bad faith.  See Hoskins v. Titan Valve Equities Group, Inc., 252 Conn. 789, 793 (2000).  "Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity.  [I]t contemplates a state of mind affirmatively operating with furtive design or ill will." Miller Auto. Corp. v. Jaguar Land Rover N. Am., L.L.C., No. 3:09-CV-1291 EBB, 2010 WL 3417975, at *4 (D. Conn. Aug. 25, 2010) (quoting Buckman v. People Express, Inc., 205 Conn. 166, 171 (1987)).  There are no factual allegations in the amended complaint that USJ acted with such a purpose.

---

[3] In the absence of further factual support, the allegation that Battle "specifically promised" the same thing to "all students in the MSW program" is similarly unavailing.

In their opposition to the motion to dismiss, plaintiffs claim to have alleged in the amended complaint that "the defendants took advantage of and exploited the pandemic to better its own financial standing," citing ECF No. 23 ¶¶ 64-66. The cited paragraphs appear in count two of the amended complaint, which deals with unjust enrichment.  None of the cited paragraphs says anything about the intent behind USJ's decision not to refund tuition.[4]

Plaintiffs also point to paragraph 15 (alleging that in-person courses cost more per unit than online ones), paragraph 20 (alleging that USJ has continued to charge full tuition for online instruction), and paragraph 23 (alleging that the University received over $600,000 in federal pandemic relief funding).  See ECF No. 32 at 10.  These allegations fall short

---

[4] The cited paragraphs say:

> 64. The University of Saint Joseph has unfairly and inequitably retained the tuition and fees paid by the plaintiffs and class members and failed to provide the services for which the tuition and fees were collected.
> 65. The online educational services substituted for the in-person education for which the plaintiffs and class members paid has substantially lesser value but the University of Saint Joseph has retained full payment.
> 66. It would be unjust and inequitable for the University of Saint Joseph to retain benefits in excess of the services it provided and the University of Saint Joseph should therefore be required in equity to disgorge any tuition and fees and related expenses that exceed the value of online education it provided.

ECF No. 23 ¶¶ 64-66.

of pleading "bad faith."  Certainly, the amended complaint characterizes USJ's refusal to partially refund tuition as unfair.  But "the court cannot infer that [USJ] acted with 'dishonest purpose or moral obliquity' simply because it exercised its discretion in a matter that appears to be economically imbalanced to [plaintiffs]."  Michel v. Yale University, Case No. 3:20-cv-1080(JCH), 2021 WL 2827358 at *8 (D. Conn. July 7, 2021).  Accordingly, count one is dismissed for failure to state a claim.

     b. Count Two: Unjust Enrichment

In addition to their contract claim, plaintiffs attempt to bring a claim for unjust enrichment.  "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."  Town of New Hartford v. Connecticut Res. Recovery Auth., 291 Conn. 433, 451-52 (2009); see Kelley v. Five S Group, LLC, 136 Conn. App. 57, 63-64 (2012); see also Restatement (Third), Restitution and Unjust Enrichment § 1 (Am. L. Inst. 2011).  Plaintiffs allege that they "conferred a benefit on [USJ] in the form of money paid for tuition, fees and expenses in exchange for certain services and promises," ECF No. 23 ¶ 59, but the university did not provide those services, id. ¶ 64.  They allege that this

failure was to their detriment because "[t]he online educational services substituted for the in-person education for which the plaintiffs and class members paid has substantially lesser value but [USJ] has retained full payment." Id. ¶ 65.

USJ argues that the unjust enrichment claim must be dismissed because, "[u]nder well settled principles of Connecticut law, the existence of a contract governing a particular subject matter precludes recovery in quasi contract for events arising out of the same subject matter." ECF No. 29 at 17, citing Marjanovic v. Naugatuck Valley Women's Health Specialists, P.C., No. UWYCV-146022762-S, 2015 WL 3519101, at *5 (Conn. Super. Ct. May 7, 2015). However, when a contract concededly exists, a court may still award equitable relief in the form of restitution if doing so is not inconsistent with the terms of the contract. See Town of New Hartford, 291 Conn. at 455. This principle applies when the contract acknowledged by the defendant does not address the disputed issue, here, USJ's refusal to provide a partial refund. See Wnorowski v. Univ. of New Haven, No. 3:20-CV-01589 (MPS), 2021 WL 3374737, at *8 (D. Conn. Aug. 3, 2021); see also 1 Restatement (Third), supra, § 2(2) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment.").

11

Plaintiffs' claim fails because the allegations of the amended complaint are insufficient to support an award of restitution.  The law of unjust enrichment provides a remedy in restitution when, because of mistake or supervening change in circumstances, the outcome of a contractual exchange results in a disadvantage to one party and a gain to the other that the parties did not anticipate. See Restatement (Third), supra, § 34(1) ("A person who renders performance under a contract that is subject to avoidance by reason of mistake or supervening change of circumstances has a claim in restitution to recover the performance or its value, as necessary to prevent unjust enrichment.").  Recovery is available to the disadvantaged party when "the resulting exchange, in its actual realization, finds no adequate basis in contract because it is not what the parties had in mind." Id. cmt. (a).  In addition, the disadvantaged party must show that the contractual exchange has produced an unjustified enrichment of the other party. Id. cmts. (b)-(d).

In this case, plaintiffs' unjust enrichment claim rests on the same allegations as the contract claim, see ECF No. 23 ¶ 57. Those allegations, offered to show USJ's breach of a contractual duty, fall short of showing that the parties' contract is voidable due to mistake or supervening change in circumstances. In addition, although plaintiffs allege that the shift to online classes was detrimental to them, they fail to allege facts

12

showing that it resulted in a measurable benefit to USJ for which legal liability may be imposed.[5]  Accordingly, this claim must be dismissed as well.

### c. Count Three: CUTPA

Plaintiffs also attempt to plead a cause of action under the Connecticut Unfair Trade Practices Act, which provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).  An act or practice is deceptive if three elements are satisfied: "First, there must be a representation, omission, or other practice likely to mislead consumers.  Second, the consumers must interpret the message reasonably under the circumstances.  Third, the misleading representation, omission, or practice must be material—that is, likely to affect consumer decisions or conduct."  Cadco, Ltd. v. Doctor's Assocs., Inc., 188 Conn. App. 122, 142 (2019) (quoting Caldor, Inc. v. Heslin, 215 Conn. 590, 597 (1990), cert. denied, 498 U.S. 1088 (1991)).  "[A] party

---

[5] As noted above, plaintiffs' memorandum in opposition asserts that "the defendant took advantage of and exploited the pandemic to better its financial standing," citing ECF No. 23 ¶¶ 64-66. However, neither paragraph alleges any facts showing an unjustified enrichment.  Paragraph 64 merely asserts in conclusory terms that USJ has "unfairly and inequitably retained the tuition and fees paid by plaintiffs and class members."  No facts are alleged to show that, by retaining the amounts paid, USJ has gained a measurable benefit justifying an award of restitution.

need not prove an intent to deceive to prevail under CUTPA." Id. (quoting Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 106 (1992)). Plaintiffs allege that USJ violated CUTPA "by falsely representing and passing off to the plaintiff and class members that an online education has the same value as in-person education." ECF No. 23 ¶ 70.

USJ argues that plaintiffs' CUTPA claim is barred by the educational malpractice doctrine. The doctrine applies "[w]here the essence of the complaint is that an educational institution breached its agreement by failing to provide an effective education, [and] the court is asked to evaluate the course of instruction and called upon to review the soundness of the method of teaching that has been adopted by that educational institution." Gupta, 239 Conn. at 591 (quoting Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir. 1992)) (alterations and ellipsis omitted). "Among other problems for adjudication, these claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached." Id. at 591. Connecticut courts have applied the educational malpractice doctrine to CUTPA claims. Wightwood Sch. v. Fritz, No. 410060, 1999 WL 240727, at *3 (Conn. Super. Ct. Apr. 9, 1999). USJ argues that "Plaintiffs' CUTPA claim only implicates the University's provision of an allegedly

inferior education after the classes became remote," ECF No. 29 at 26 (citing ECF No. 23 ¶¶ 24, 70), and therefore would require an evaluation of the adequacy of USJ's online courses.[6]

In several COVID-19 tuition refund cases in this district, plaintiffs successfully fended off motions to dismiss contract claims based on the educational malpractice doctrine. See Metzner v. Quinnipiac University, 528 F. Supp. 15, 26-31 (D. Conn. 2021); Wnorowski, 2021 WL 3374737, at *3-4; and Michel, 2021 WL 2827358 at *5. To the extent the plaintiffs focused on the difference in "value" between online and in-person education, those arguments were deemed relevant only to the issue of damages. Here, in contrast, USJ is alleged to have "falsely represented" that "an online education has the same value as an in-person education" in violation of CUTPA. ECF No.

---

[6] Defendant relies on Johnson v. Schmitz, 119 F. Supp. 2d 90 (D. Conn. 2000). There, the court held that the plaintiff's CUTPA claim was barred for a separate reason: CUTPA applies only to "the conduct of [] trade or commerce," Conn. Gen. Stat. § 42-110b, and the plaintiff's claim that faculty advisors on his dissertation committee misappropriated his academic ideas fell outside the statute's scope. Id. at 103-105. Plaintiffs point out that they challenge not USJ's decision to discontinue in-person education, which would arguably be a matter of university discretion outside CUTPA's scope, but rather the "financial decision not to provide a refund." ECF No. 32 at 13. I agree with plaintiffs that this case implicates a "commercial aspect" of USJ's operation and is therefore distinguishable from Johnson. See Johnson, 119 F. Supp. 2d at 104; see also Michel, 2021 WL 2827358, at *10 (D. Conn. July 7, 2021) (analyzing CUTPA claim under similar facts).

23 ¶ 70.  Adjudicating this claim would seem to necessarily require a determination of the issue whether a statement by USJ equating the value of its online and in-person classes would actually be false – i.e., whether an in-person education was more valuable than an online one.

However, I need not decide whether a well-pleaded CUTPA claim alleging this theory of liability would be barred by the educational malpractice doctrine because plaintiffs' CUTPA allegations are plainly insufficient to state a claim.  The amended complaint does not identify a representation or omission by USJ in support of its conclusion that USJ "falsely represent[ed] and pass[ed] off to the plaintiff and class members that an online education has the same value as in-person education."  ECF No. 23 ¶ 70.  See Michel, 2021 WL 2827358, at *10 (dismissing CUTPA claim based on nearly identical allegations).  Therefore, this count is dismissed as well.

IV. Conclusion

Accordingly, the amended complaint is hereby dismissed without prejudice.

So ordered this 3rd day of January 2022.

                                              /s/ RNC
                                      Robert N. Chatigny
                                  United States District Judge